

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| vs. § | CRIMINAL ACTION NO.: 0:23-945-MGL-5 |
| § | |
| JARMAN LAMAR WHITE, § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO SUPPRESS**

## I.  INTRODUCTION

Pending before the Court is Defendant Jarman Lamar White's (White) motion to suppress pre-*Miranda* statements.  Having carefully considered the motion, the response, the reply, the oral argument, the exhibits, the record, and the applicable law, it is the judgment of the Court White's motion will be granted.

## II.  FACTUAL AND PROCEDURAL HISTORY

The Court determines the following facts by a preponderance of the evidence.  *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").

On June 13, 2018, a team of Federal Bureau of Investigation (FBI) agents went to a home in Rock Hill to execute a search warrant (the Stephanie Lane home). Agents also served warrants at three other homes related to the case at about the same time.

The FBI agents knew suspects had stored several pill press machines, which had been used to produce fake oxycodone pills using fentanyl, at the Stephanie Lane home.

After agents had taken White and another occupant of the Stephanie Lane home out of the house in handcuffs, one of the agents asked White how long he had been in the house and whether there was any fentanyl inside. The agent cited "officer safety reasons."

White admitted there was fentanyl in the house, and said "D-Hemp" had brought it. The agent asked where "D-Hemp" had put the fentanyl. White responded it was downstairs. White also answered some additional questions.

Later, officers provided White his *Miranda v. Arizona*, 384 U.S. 436 (1966), warnings, after which he gave a similar statement to what the Court detailed above.

A grand jury thereafter indicted White for conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846; felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and (e); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).

After White filed this motion to suppress, the government responded and White replied. The Court subsequently held a hearing in which it heard oral argument, but neither party called any witnesses. At the conclusion of the hearing, the Court took the matter under advisement. The Court, having been fully briefed on the relevant issues, will now adjudicate the motion.

**III.     STANDARD OF REVIEW**

The Fifth Amendment provides "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]"  U.S. Const. amend. V.

To help protect this constitutional right, the Supreme Court has ruled law enforcement must advise a defendant of his Fifth Amendment rights—i.e., provide a defendant with *Miranda* warnings—prior to custodial questioning.  *Miranda*, 384 U.S. at 444.

In general, "[a] confession made during a custodial interrogation will be suppressed unless police advise the defendant of his rights under *Miranda v. Arizona*, 384 U.S. 436 . . . (1966), and the defendant knowingly, intelligently, and voluntarily waives those rights."  *United States v. Holmes*, 670 F.3d 586, 591 (4th Cir. 2012).

**IV.     DISCUSSION AND ANALYSIS**

White insists the Court should suppress his pre-*Miranda* statements because the agent lacked any emergent need to question him.  The government, however, maintains "officer safety reasons"—namely, the danger presented to officers' health by coming into contact with fentanyl—allowed the questioning.

As the government correctly notes, the Supreme Court has carved out a narrow public safety exception to *Miranda*.  *New York v. Quarles*, 467 U.S. 649 (1984).  For it to apply, there must be "an objectively reasonable need to protect the police or public from any immediate danger" that "outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination."  *Id.* at 657, 659 n.8.  The standard is objective; thus, the exception fails to rely on "the subjective motivation of the arresting officer."  *Id.* at 656.

3

Here, absent was any danger to public safety, exigent circumstances, or immediate danger to officers. The officers had cleared the Stephanie Lane home. This is in contrast with *Quarles*, in which

> [t]he police . . ., in the very act of apprehending a suspect, were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket. So long as the gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it obviously posed more than one danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it.

*Id.* at 657.

Here, the officers had the option to wait for law enforcement with the appropriate protective wear to arrive to avoid possibly being harmed by coming into contact with the fentanyl. Indeed, they were serving the search warrant to look for fentanyl in the home. It therefore strains credulity for the government to argue the officers had an immediate need to know exactly where in the house fentanyl laid.

The officers may have wanted to make their task easier, to save a little time and convenience in searching for the drugs. But, a few wasted minutes fails to an emergency make.

The other case cited by the government, which is non-binding fails to persuade the Court. In *United States v. Elder*, No. 17-CR-05-A, 2018WL833132, at *4 (W.D.N.Y. Feb. 13, 2018), a judge denied a motion to suppress where, after recovering drugs in the defendant's kitchen, an agent asked "whether 'anything in [the] suspected drugs [wa]s going to hurt the agent?'" (alterations omitted).

The Court is unconvinced the ruling in *Elder* is consistent with *Quarles*. In any case, however, it is distinguishable from the instant situation. In *Elder*, the officer had drugs in his hand and wanted to ensure he lacked the need for immediate protective action. *Id.* Here, the

4

officers were safely separated from the potential drugs, and could easily wait for safety measures. Instead, they chose to compromise White's constitutional rights.

At bottom, *Quarles* supplies an objective standard for the public safety exception, which is simply unmet here. The Court declines the government's invitation to sacrifice White's Fifth Amendment rights on the altar of efficiency, expediency, and police ease. Accordingly, the Court will suppress White's pre-*Miranda* statements.

## V.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court White's motion to suppress, ECF No. 207, is **GRANTED**.

**IT IS SO ORDERED.**

Signed this 13th day of May, 2024, in Columbia, South Carolina.

s/ Mary Geiger Lewis  
MARY GEIGER LEWIS  
UNITED STATES DISTRICT JUDGE
